IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XIANHUA ZHANG | : | |
| Plaintiff, | : | Case No. 07-555 (JJF) |
| v. | : | |
| ING DIRECT | : | |
| Defendant. | : | |

**DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S
INTERROGATORIES DIRECTED TO DEFENDANT- SET NO. 1**

Defendant ING Bank, fsb ("Defendant" or the "Bank") improperly referred to as ING Direct, by and through its undersigned attorneys, hereby responds and objects to Plaintiff's Interrogatories Directed to Defendant – Set No. 1.

### INTRODUCTION

These Responses and Objections to Plaintiff's Interrogatories reflect Defendant's best present knowledge based upon its review and investigation of its files to date. Defendant reserves the right to amend or supplement these Responses and Objections as further review or the discovery of additional information may warrant.

These Responses and Objections are made explicitly subject to, and without in any manner limiting, waiving, or otherwise compromising, the General Objections set forth below. Defendant has answered the Interrogatories as fully and specifically as is reasonably possible without undue burden to it.

## **GENERAL OBJECTIONS**

1. Defendant objects generally to the interrogatories insofar as they purport to seek information protected by the attorney-client privilege, the work-product doctrine, the trial preparation doctrine, or any other applicable privilege or protective doctrine.

2. Defendant objects generally to the interrogatories to the extent that they are overly broad and/or seek the discovery of information not relevant to or not reasonably calculated to lead to the discovery of admissible evidence in this case.

3. Defendant objects generally to the interrogatories to the extent that they attempt to impose an undue burden on Defendant.

4. Defendant objects generally to the interrogatories to the extent that they contain vague, ambiguous, illogical, and/or undefined terms and/or phrases.

5. Defendant objects generally to the interrogatories to the extent that they seek information outside the scope of information known or readily obtainable by Defendant.

6. Defendant objects generally to the interrogatories and the instructions and definitions to the extent they purport to impose duties and obligations upon Defendant beyond those imposed under the Federal Rules of Civil Procedure and local rules.

7. Defendant objects generally to the interrogatories to the extent they are not limited in temporal scope to times relevant to this litigation.

8. Defendant objects generally to the interrogatories because Plaintiff has exceeded the number of interrogatories permitted under the Federal Rules of Civil Procedure.

Defendant incorporates the foregoing general objections by reference into its responses and objections to each and every one of the specific interrogatories below.

## RESPONSES TO INTERROGATORIES

1.  Describe in details why Kelley Yohe, Defendant's Team Lead Database Services changed Plaintiff's job assignments fundamentally after Plaintiff's first job review with her on 5/25/05.

**RESPONSE:**

Defendant objects to Interrogatory no. 1 on the basis that the interrogatory assumes that Kelley Yohe "changed Plaintiff's job assignments fundamentally." Subject to and without waiver of this, or any other applicable objections, Ms. Yohe did not fundamentally change Plaintiff's job assignments after his first review. By way of further answer, as Ms. Yohe learned of and observed Plaintiff's deficiencies, whenever possible, she attempted to assign tasks to Plaintiff that were in his areas of relative strength.


2.  Describe in details why 'work fast' and 'type fast' is the most important requirement or very important requirement for Oracle Database Support Engineer III.

**RESPONSE:**

Defendant objects to Interrogatory no. 2 to the extent it seeks to characterize both Defendant's requirements and how Defendant prioritizes its requirements. Subject to, and without waiver of this or any other applicable objections, as explained in the job description for the Database Support Engineer III – ORACLE position, a sizeable portion of the job functions of the Database Support Engineer III – ORACLE position involve typing, including for example, writing perl, ch shell, c and pl/sql scripts, designing database architecture, installing and configuring new database systems, and writing comprehensive, detailed documentation. Thus, an individual in this position must be able to type at a proficient and productive level.

3.  Describe in details why Kelley Yohe still insisted that Plaintiff should use perl that is mainly a tool used by programmers to work on the assignments after Plaintiff informed her that he is not good at perl but he can use shell to get same results.

**RESPONSE:**

Defendant objects to the assumption in the interrogatory that Ms. Yohe "insisted that Plaintiff should use perl." Defendant also objects to the characterization in the interrogatory that perl "is mainly a tool used by programmers." Subject to and without waiver of these or any other applicable objections, Ms. Yohe did not "insist" Plaintiff use perl to complete assignments. By way of further answer, Ms. Yohe recommended to her reports that they use either the language that they were most comfortable with or a particular database language (including perl), if that language was required to accomplish a specific script writing task.

4.  Describe in details why perl is so important for Oracle Database Support Engineer III – DBA. Describe in details why Defendant considered perl skill more important than Oracle DBA skills when evaluating Plaintiff's job performance. Describe in details whether Defendant treats other Database Support Engineers the same way.

**RESPONSE:**

Defendant objects to the assumption in the interrogatory that Defendant "considered perl skill more important than Oracle DBA skills when evaluation Plaintiff's job performance." Defendant further objects on the basis that the phrase "Oracle DBA skills" is vague, undefined and subject to multiple interpretations. Subject to and without waiver of these or any other applicable objections, Plaintiff's interrogatory demonstrates a fundamental misunderstanding of the Database Support Engineer III – ORACLE position. As explained in the job description, the ability to use perl and other scripting languages to administer and maintain Defendant's databases is part of the expected database administrator skill set and is required for the Database

Support Engineer III – ORACLE position. Defendant treated its other database engineers the same way.

5.  Describe in details why it took Kelley Yohe about 70 days to find that Plaintiff only 'have conceptual knowledge of ORACLE' for this DBA job requirement 'Four-year degree in related discipline with 7 years experience in systems development Minimum of 5 Years of working with Oracle/SQL Server Databases in an administrative and development support role.'?

**RESPONSE:**

Defendant objects to Interrogatory no. 5 on the basis that the interrogatory assumes that "it took Ms. Yohe about 70 days to find Plaintiff 'have conceptual knowledge of ORACLE.'" Defendant further objects on the ground that the interrogatory is confusing, ambiguous and subject to multiple interpretations. Subject to, and without waiver of these or any other applicable objections, Ms. Yohe determined after some period of supervision and review of Plaintiff's work that he had a conceptual knowledge of Oracle. She also determined that, despite this apparent knowledge, Plaintiff was having difficulty applying his purported knowledge, would not or could not complete the tasks assigned to him, lacked proficiency in scripting, and generally did not meet the performance expectation of a senior database administrator.

6.  Describe in details why Defendant thinks that Dan Lu – the replacement of Plaintiff is a better fit for Oracle Database Support Engineer III than Plaintiff.

**RESPONSE:**

Defendant objects to Interrogatory no. 6 based on Plaintiff's characterization of Dan Lu as Plaintiff's "replacement." Defendant further objects to Interrogatory no. 6 on the ground that it is overly broad and seeks information neither relevant to this action nor reasonably likely to lead to the discovery of admissible evidence. Subject to, and without waiver of this or any other

applicable objections, the Bank did not consider whether Mr. Lu would be "a better fit" than Plaintiff. Rather, Defendant terminated Plaintiff's employment because, after approximately four months of employment, Plaintiff failed to demonstrate that he had the requisite skills and knowledge to perform the duties of the Database Support Engineer III – ORACLE position at an adequate level. Defendant subsequently hired Mr. Lu based on his communicated level of relevant experience and education.

7. Describe in details Dan Lu's VERIFIED perl and Oracle database and DBA skills.

**RESPONSE:**

Defendant objects to Interrogatory no. 7 on the ground that it seeks information neither relevant to this action nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiver of this or any other applicable objections, Defendant refers Plaintiff to Mr. Lu's resume, which shall be produced to Plaintiff. By way of further answer, Mr. Lu administered and monitored Defendant's ORACLE databases effectively, completed the tasks assigned to him in a timely fashion, was resourceful, demonstrated the ability to detect and resolve critical issues in a timely, effective and efficient manner, acted with initiative, and used his strong analytical and scripting skills to maintain and develop effective architectural designs to improve the efficiency of Defendant's database resources.

8. Describe in details how Defendant discharges employees. Does Defendant not allow discharged people to go back to their working area to gather their personal property? Does Defendant use security guards to confine discharged people? Does Defendant seize discharged people's personal property and Personal Time Off and Business Time Off pay?

**RESPONSE:**

Defendant objects to Interrogatory no. 8 on the ground that it is overly broad and seeks information neither relevant to this action nor reasonably likely to lead to the discovery of admissible evidence. Defendant also objects on the ground that asking Defendant how it "discharges employees" is too open ended and undefined to permit a response. Subject to and without waiver of these or any other applicable objections, and interpreting the interrogatory as seeking information concerning the three questions posed after the initial sentence, Defendant answers as follows:

Defendant has the right and obligation to protect its own and its employees' property and the safety of its employees. It therefore reserves, and on appropriate occasion exercises, the right to ask discharged employees to leave the facility upon being notified on their termination without first returning to their workstations. Defendant does not seize the personal property of discharged employees or confine the employees. It does, however, seek the return of documents and materials that belong to the Bank.

Defendant pays discharged employees who satisfactorily pass the introductory period for accrued time off. Employees do not accrue paid time off during their introductory period, and Defendant therefore does not pay employees who are terminated during their introductory period for this time.

9.    Describe in details how Naomi Seramone HR Defendant told Plaintiff about the way to handle his personal property during discharge meeting on 8/16/05.

**RESPONSE:**

Ms. Seramone informed Plaintiff that the contents of his cubicle would be reviewed for the purpose of determining which materials belonged to Plaintiff and to ensure that those

materials, but not the Bank's own materials, were returned to him. By way of further answer, Plaintiff's personal property was returned to him at the conclusion of the August 16, 2005 termination meeting.

10. Describe in details who gave Naomi Seramone right to cheat Plaintiff by promising to bring that small cabinet storing Plaintiff's personal property without touching insides but later went through Plaintiff's personal property in it without Plaintiff permission and knowledge.

**RESPONSE:**

Defendant objects to Interrogatory no. 10 on the basis that it assumes Defendant "cheated" Plaintiff and "touched the insides" of Plaintiff's personal property. Defendant further objects on the basis that the phrase "small cabinet" is vague, confusing and subject to multiple interpretations. Subject to and without waiver of these or any other applicable objections, Ms. Seramone did not promise, and Plaintiff did not ask her, to bring any "small cabinet" to him. Defendant can only assume the phrase "small cabinet" refers to drawers which are physically attached to the desk in Plaintiff's former cubicle. Thus, Defendant would be physically unable to bring Plaintiff the "small cabinet" even if he did ask for it.

By way of further answer, after the decision to terminate Plaintiff's employment was made, and while Plaintiff was meeting with Ms. Seramone concerning his separation, Ms. Seramone informed Plaintiff that the Bank would review the contents of Plaintiff's cubicle for the purpose of gathering those materials that belonged to Plaintiff. A Bank employee then reviewed the contents of Plaintiff's cubicle, gathered Plaintiff's personal property, and returned it to him before he left the August 16, 2005 termination meeting.

11.  State all facts why Naomi Seramone not to bring that small cabinet storing Plaintiff's personal property without touching insides to Plaintiff so that he could get his personal property during discharge.

**RESPONSE:**

Defendant restates and incorporates its response to Interrogatory no. 10.

12.  State all facts who gave Defendant right to go through Plaintiff's personal property without Plaintiff permission and knowledge and seize Plaintiff's personal property during discharge.

**RESPONSE:**

Defendant restates and incorporates its response to Interrogatory no. 10.

13.  State all facts who gave Defendant right to use security guard to confine Plaintiff during discharge.

**RESPONSE:**

Defendant objects to Interrogatory no. 13 on the ground that it assumes that Defendant "use[d] a security guard to confine" him. Subject to and without waiver of this or any other applicable objections, Plaintiff was never "confined" during his discharge. Plaintiff was free to leave Defendant's premises at any time during the discharge meeting and the door to the conference room where the termination meeting took place was open throughout the meeting. By way of further answer, after the discharge meeting concluded, Plaintiff refused to leave Defendant's premises and it was for this reason that Defendant had to call for a security guard.

14.  State all facts why Naomi Seramone still refused to return Plaintiff's personal property seized by Defendant during discharge after she got two emails from Plaintiff on 8/25/05 and 8/29/05.

**RESPONSE:**

Defendant objects to Interrogatory no. 14 on the ground that it assumes that Defendant "seized" his personal property or otherwise refused to return it. Subject to and without waiver of this or any other applicable objections, Defendant did not "seize" Plaintiff's personal property or refuse to return it to him at any time. Plaintiff's personal property was returned to him during the August 16, 2005 termination meeting.

15. State all facts who gave Defendant right to seize Plaintiff's Personal Time Off and Business Time Off pay.

**RESPONSE:**

Defendant objects to Interrogatory no. 15 on the ground that it assumes that Defendant "seized Plaintiff's Personal Time Off and Business Time Off pay." Subject to and without waiver of this or any other applicable objections, Defendant did not "seize" Plaintiff's Personal Time Off or Business Time Off pay. Defendant's policy is that employees do not accrue personal time off during the Introductory period. Plaintiff's employment with Defendant was terminated prior to his successful completion of the Introductory Period. Thus, Plaintiff failed to accrue any personal time off during his employment with Defendant.

16. Describe in details about the lead time Defendant requires employees to give before resigning from the company and lead time Defendant gives to discharged employees.

**RESPONSE:**

Defendant objects to Interrogatory no. 16 on the ground that it seeks the discovery of information not relevant to or not reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to and without waiver of this or any other applicable objections, Defendant requests, but does not require, that its employees notify their respective manager in

writing at least ten (10) business days in advance of the employee's final day of work.

Defendant does not have a policy for providing notice to at-will employees, like Plaintiff, who are discharged.

17. State all facts whether Defendant discharged Plaintiff exactly the same way it discharges other employees, including all but not limit to: Personal Time Off and Business Time Off pay, handling of personal property, lead time given, use of security guard etc.

**RESPONSE:**

To the extent this interrogatory asks Defendant to compare and contrast Plaintiff's termination with that of all other former employees, Defendant objects to the interrogatory as unduly burdensome and on the ground that it seeks information neither relevant, nor reasonably likely to lead to the discovery of admissible information. Subject to and without waiver of these, or any other applicable objections, Defendant carried out the termination of Plaintiff's employment in a lawful manner and consistent with its personnel policies and past practice.

18. Describe in details about Defendant's Personal Time Off and Business Time Off pay policy.

**RESPONSE:**

Defendant objects to Interrogatory no. 18 on the ground that it is overly broad and seeks the discovery of information not relevant to or not reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to and without waiving this or any other applicable objections, Defendant's policies with respect to personal time off are described on pages 28-30 of Defendant's Employee Guide and in Defendant's Standard Employment Terms and Conditions, which shall be produced to Plaintiff. By way of further answer, Defendant incorporates its answer to Interrogatory nos. 8 and 15.

19.    Describe in details about qualifications set by Defendant for its employees to be enrolled into Defendant sponsored company 401K program.

**RESPONSE:**

Defendant objects to Interrogatory no. 19 on the ground that it is overly broad and seeks the discovery of information not relevant to or not reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to, and without waiver of this or any other applicable objection, Defendant's policies with respect to its 401(k) program are described on page 25 of Defendant's Employee Guide, which shall be produced to Plaintiff.

20.    Describe in details about qualifications set by Defendant for its database engineers in Defendant's Database Services team to be on the on-call schedules.

...

**RESPONSE:**

Defendant does not maintain a formal policy or set criteria for when a database engineer is placed on-call. The decision to place an individual on-call is made on an case-by-case basis by the manager in charge. Ms. Yohe's practice during the time of Plaintiff's employment was to wait approximately 90 days, give or take, before placing a new database engineer on-call and, for some period thereafter, to pair the new employee with a more senior person while on-call.

Dated: May 1, 2008

_David P. Primack_
David P. Primack (I.D. No. 4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Wilmington, DE 19801-1254
(302) 467-4220
(302) 467-4201 fax
Attorneys for Defendant/Counterclaim Plaintiff
ING Bank, fsb

OF COUNSEL:
David J. Woolf (admitted *pro hac vice*)
Edward N. Yost (admitted *pro hac vice*)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

## VERIFICATION

I verify, under penalty of perjury under the laws of the United States, that the facts and information set forth in Defendant ING Bank fsb's Answers and Objections to Plaintiff's Interrogatories Directed to Defendant – Set No. 1 are true and correct to the best of my information, knowledge and belief.

Dated: May 1, 2008

By: Kelley Yohe

PHLIT\707406\1

## CERTIFICATE OF SERVICE

I, David P. Primack, do hereby certify that, on this date, a true and correct copy of the foregoing Defendant's Answers and Objections to Plaintiff's Interrogatories Directed to Defendant – Set No. 1 was timely served by first class mail, postage prepaid, upon the following:

                                  Xianhua Zhang
                                  212 Yorktown Court
                                  Malvern, PA 19355

Dated: May 1, 2008                */s/ David P. Primack*
                                  David P. Primack (I.D. No. 4449)
                                  DRINKER BIDDLE & REATH LLP
                                  1100 N. Market Street
                                  Wilmington, DE 19801-1254
                                  (302) 467-4220
                                  (302) 467-4201 fax
                                  david.primack@dbr.com